**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

LAUREN SMITH and C.M., a minor
by her parent and natural guardian
Lauren Smith,

                       Plaintiffs,

- against -

ULTA BEAUTY, INC.

                       Defendant.

---------------------------------------------------------X

**Case No. 26-cv-1996**

**COMPLAINT**

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

Plaintiffs LAUREN SMITH and C.M., a minor by her parent and natural guardian Lauren Smith, by and through their attorneys, DOLCE LAW PLLC, hereby complain of Defendant ULTA BEAUTY, INC., upon information and belief, as follows:

**NATURE OF THE CASE**

1. On July 6, 2025, Plaintiff LAUREN SMITH and her seven-year-old daughter, both professional models, arrived at Defendant ULTA BEAUTY's 86th Street location in Manhattan for scheduled hair appointments before a professional photoshoot. Despite having confirmed appointments, they were refused service because their assigned stylist, Jessica C., was "not comfortable" doing their "type" or "texture" of hair. Store manager Mohammed Salam endorsed the refusal. At the time, both Plaintiffs were wearing hats that fully concealed their hair, and no employee asked to see or examine their hair texture. It therefore became immediately apparent that the stated reason was a pretext for race-based discrimination, a conclusion reinforced by New York's mandate that all licensed stylists possess the competency to service all hair textures. See N.Y. Gen. Bus. Law §§ 404, 407.

2. Plaintiffs were deeply humiliated in the presence of other customers, and the seven-year-old child left the premises in tears. This incident was not isolated but reflects a broader pattern of discrimination against Black customers.

3. Ulta publicly represents that "everything we do is designed to enhance the guest experience and celebrate individuality" and that it "celebrate[s] what makes each guest unique," including a commitment to inclusivity across "skin tones and hair types."[1] In stark contrast to these promises, Ulta employees refused service to Plaintiffs based on assumptions about their hair texture drawn from their skin color, treating their hair texture as a basis to deny service rather than to "celebrate individuality." This discriminatory refusal of service squarely contradicts Ulta's professed commitment to welcoming, inclusive, and bias-free guest experiences.

4. By denying Plaintiffs service because of their race, Defendant unlawfully discriminated against them in a place of public accommodation, in violation of Section 1981 of the Civil Rights Act of 1866, as amended in 1991, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 296(2) ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4) ("NYCHRL").

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1343, as Plaintiffs have asserted claims that arise under federal laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state and city law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims in this action that they form part of the same case or controversy.

---

[1] Ulta Beauty DEI | Diversity, Equity & Inclusion Commitments, https://www.ulta.com/company/dei.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as it is the judicial district in which the acts and omissions giving rise to the claims occurred.

## THE PARTIES

*Plaintiffs*

7.      Plaintiff LAUREN SMITH (hereinafter, "Ms. Smith") is a Black woman who resides in New York City.

8.      Plaintiff C.M. is a Black female minor who resides with her mother, Ms. Smith, in New York City.

*Defendant*

9.      Defendant ULTA BEAUTY, INC. (hereinafter, "Defendant") is a Delaware corporation conducting business in the State of New York. Defendant operates as a beauty retailer and salon service provider with approximately 1,491 retail locations throughout the United States, making it one of the nation's largest beauty retailers.

10.     Defendant operates a store and salon located at 188 East 86th Street, New York, New York 10028 ("86th Street Location").

## MATERIAL FACTS

11.     Defendant publicly professes a belief that "beauty is for everyone"[2] and positions itself as an inclusive beauty retailer that serves customers of all backgrounds. Defendant's marketing materials feature diverse models, including Black women and children, prominently displayed throughout its stores. This creates a representation and expectation that Defendant welcomes and serves customers regardless of race.

12.     Ms. Smith is a professional model and mother who, along with her seven-year-old daughter, had scheduled hair styling appointments at Defendant's 86th Street Location on July 6,

---

[2] Ulta Beauty DEI | Diversity, Equity & Inclusion Commitments, https://www.ulta.com/company/dei.

2025, at 11:00 AM. Both mother and daughter had an important professional photoshoot scheduled for 3:00 PM that same day, requiring professional hair styling services beforehand.

13. On July 6, 2025, at approximately 11:00 AM, Ms. Smith and her daughter arrived punctually for their scheduled appointments. After waiting 10 minutes, a male stylist approached them and stated that their assigned stylist, Jessica C., would "not be doing [their] hair today." When Ms. Smith inquired if the stylist was running late, she was told that Jessica C. "doesn't do your type of hair."

14. When Ms. Smith asked for clarification about what was meant by "your type of hair," she was told Jessica C. "doesn't have experience with YOUR kind of hair." Ms. Smith, a professional model experienced with various hair professionals, offered to assist and guide the stylist through the process.

15. Despite this offer, Jessica C. continued to refuse service. Ms. Smith then requested to speak with a manager. Manager Mohammed Salam confirmed that "the stylist will not be able to do your hair today" and stated that Jessica C. was "not comfortable doing your kind of hair." When pressed to explain what "kind of hair" they were referring to, Salam specifically stated it was their "texture of hair."

16. Critically, both Ms. Smith and her daughter were wearing hats that completely concealed their hair. No employee ever asked to see their hair, examine its texture, or inquire about their specific styling needs.

 

17. Furthermore, as of May 15, 2024, hair stylists licensed in New York State must be trained to provide services to individuals of all hair textures. N.Y. Gen. Bus. Law § 404 (McKinney 2024).

18. Jessica C. did not speak directly to Ms. Smith or her daughter at any point during this 20-minute ordeal until approximately 1 minute and 30 seconds into a recording Ms. Smith began making at 11:19 AM. When Ms. Smith pointed out the logical impossibility of determining Plaintiffs' hair texture while their hair was completely covered, and suggested this refusal was based on race rather than hair texture, Jessica C. stated, "You're getting an attitude, so I really don't want to."

19. Salam refused to provide alternative stylists, stating "I don't have anyone here who will do it," and refused to call in other staff. When informed of the time-sensitive photoshoot, Mr. Salam callously stated, "Then you should have wrote [sic] in your appointment what kind of hair

5

you have," and, when Ms. Smith correctly noted there was no such requirement in Defendant's booking system, further stated, "You should have written it in."

20. At all relevant times, the employees and manager referenced herein were acting within the scope of their employment and with actual or apparent authority, rendering Defendant liable for their acts and omissions.

21. This discriminatory treatment occurred in full view of other customers, causing severe humiliation to Ms. Smith and traumatic distress to her seven-year-old daughter who left the store crying hysterically and asking, "What is wrong with my hair?" and "Why can't I go there if there are brown girls on the walls?" referring to the diverse models featured in Defendant's own advertising materials throughout the store.

22. Sadly, Plaintiffs were far from the only Black people to be denied service and/or otherwise treated disparately by Defendant based on their race. This incident reflects a documented, long-standing pattern of racial discrimination at Defendant's locations nationwide. News reports and former employee statements reveal multiple incidents establishing Defendant's documented notice of discriminatory practices and failure to remediate them.

23. In 2019, multiple employees publicly disclosed management-directed racial profiling policies targeting Black and Latino customers. Former employees reported being instructed to surveil minority customers upon entry and facing retaliation for non-compliance.[3]

24. Subsequent incidents include a 2020 incident in New Jersey, where staff refused service based on a customer's "too dark" skin tone,[4] and a 2024 Florida false theft accusation.[5]

---

[3] Valerie Bolden-Barrett, *Employees, customers accuse Ulta of racial profiling*, HR Dive (Aug. 16, 2019), https://www.hrdive.com/news/employees-customers-accuse-ulta-of-racial-profiling/561064/.

[4] Janelle Griffith, *A black woman says Ulta worker told her she was 'too dark' for makeup in store*, NBC News (Jan. 2, 2020), https://www.nbcnews.com/news/us-news/black-woman-says-ulta-worker-told-her-she-was-too-n1109501.

[5] Tiffanie Drayton, '*Is the point of shopping not to pick items off the shelves?': Black woman says Ulta worker accused her of taking Juvia's Place, NYX items that were 'missing' from the shelf*, Daily Dot (Jan. 29, 2024), https://www.dailydot.com/news/ulta-beauty-black-shopper-discrimination/.

25.    Online reviews for the 86th Street Location reflect a number of reports of race discrimination submitted by patrons who are Black or Latino and were treated disparately—and worse—than white patrons.

26.    A Latina customer left a review stating that she was treated like a potential thief.



27.    A Black customer stated that she was similarly racially profiled as the only Black customer in the store at the time.



28.     A Black customer reported being repeatedly monitored while browsing and observed that Black customers were subjected to heightened scrutiny compared to non-Black customers, supporting the conclusion that employees racially profile customers at the 86th Street Location.



8

29. Additional online reviews from customers of color at the 86th Street Location describe racially disparate treatment, profiling, and hostile service.

30. These incidents demonstrate Defendant's failure to remediate known discriminatory practices. Despite repeated public exposure and legal obligations, Defendant has failed to implement effective corrective measures.

31. This established pattern demonstrates that the discrimination against Ms. Smith and her daughter was not an isolated incident but part of Defendant's systemic failure to properly train employees and create environments that serve customers in a non-discriminatory manner.

32. Upon information and belief, Defendant is aware of its obligations under federal, state, and local law.

33. Defendant's discriminatory conduct was malicious, willful, and outrageous, and was carried out with reckless and callous indifference to Plaintiffs' rights protected under federal, state, and local law. This is not a case of isolated employee misconduct. Store manager Mohammed Salam personally endorsed and enforced the refusal of service, rendering this a management-level decision attributable directly to Defendant.

34. Defendant had been on notice, through prior legal claims, public employee disclosures, and years of documented customer complaints at the very location where this incident occurred, that its employees subjected Black and Latino customers to racially disparate treatment. Despite this notice, Defendant failed to implement effective corrective measures, permitted discriminatory conduct to persist, and took no meaningful action to ensure compliance with its own stated diversity commitments or its legal obligations under federal, state, and local civil rights law.

35. Defendant's willfulness is further demonstrated by its knowing violation of New York's cosmetology licensing laws. As of May 15, 2024, more than a year before this incident, New York State law mandated that all licensed stylists be trained and competent to provide services to individuals of all hair textures. N.Y. Gen. Bus. Law §§ 404, 407.

36. Defendant, as the operator of licensed salon facilities in New York State, is charged with knowledge of and compliance with these requirements. By permitting, and through its manager endorsing, a service refusal premised on hair texture, Defendant violated not only the civil rights of Plaintiffs but a specific statutory mandate enacted to prevent precisely this form of discrimination.

37. Defendant's post-incident conduct further reflects consciousness of guilt and deliberate indifference. Upon information and belief, Defendant caused or permitted the deletion of Ms. Smith's booking record from its system following the incident, obstructing evidence of the confirmed appointments that were refused.

38. Defendant publicly markets itself as a company committed to diversity, equity, and inclusion, featuring Black women and children in its advertising materials displayed throughout the 86th Street Location. This self-described commitment stands in direct and irreconcilable contradiction with Defendant's conduct on July 6, 2025, and with the years of documented racial profiling by its employees that preceded it.

39. Defendant's exploitation of diversity messaging for commercial gain while knowingly permitting racially discriminatory conduct toward the very customers it purports to celebrate demonstrates bad faith warranting the imposition of punitive damages.

40. As such, Plaintiffs demand punitive damages against Defendant.

41. Defendant's unlawful actions have caused Plaintiffs to endure significant dignitary harm. Plaintiffs have suffered deep humiliation and lasting emotional distress. Plaintiffs continue to experience anxiety when seeking services at places of public accommodation; this anxiety triggers painful memories and fear of being turned away due to their race.

### FIRST CAUSE OF ACTION
### Discrimination in Violation of Section 1981

42. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

43. At all relevant times, Plaintiffs sought to enter into and complete a retail and salon services transaction with Defendant on the same terms and conditions as white customers.

44. Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of Section 1981, by refusing to provide services to Plaintiffs.

45. Defendant interfered with Plaintiffs' right to make and enforce contracts on equal terms.

46. Defendant acted willfully and with malice and callous indifference to Plaintiffs' federally protected rights. Defendant, through its management personnel, made a deliberate decision to refuse service to Plaintiffs based on their race. This decision was made at the management level, in a store with a documented history of racial discrimination against customers of color, by a company that had been publicly accused of racial profiling by its own employees years earlier and had failed to remediate that conduct. Defendant's actions were not a mistake but the product of systemic corporate indifference to its civil rights obligations, entitling Plaintiffs to an award of punitive damages.

47. Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

48. Defendant is liable to Plaintiffs for compensatory and punitive damages, attorneys' fees, costs and interest.

## SECOND CAUSE OF ACTION
### Race Discrimination in Violation of the NYSHRL

49. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

50. Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of the NYSHRL, by refusing service based upon Plaintiffs' race. The NYSHRL defines "race" to include traits historically associated with race, including, but not limited to, hair texture. See N.Y. Exec. Law § 292(37).

51. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL. The NYSHRL expressly defines "race" to include hair texture. N.Y. Exec. Law § 292(37). Defendant's employees and management invoked "texture of hair" as the stated basis for refusing service, a basis that both triggers NYSHRL liability and, given Defendant's knowledge of this legal standard as a licensed salon operator, renders the refusal deliberately unlawful. Plaintiffs are accordingly entitled to an award of punitive damages.

52. Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

53. Defendant is liable to Plaintiffs for compensatory and punitive damages, attorneys' fees, costs and interest.

## THIRD CAUSE OF ACTION
### Race Discrimination in Violation of the NYCHRL

54. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

55. Defendant discriminated against Plaintiffs in a place of public accommodation based on their race, in violation of the NYCHRL, by refusing service based upon Plaintiffs' race. The NYCHRL prohibits discrimination based on traits historically associated with race, including hair texture. See N.Y.C. Admin. Code § 8-107; see also N.Y.C. Comm'n on Human Rights, Legal Enforcement Guidance on Race Discrimination on the Basis of Hair (2019).

56. Defendant's unlawful discriminatory actions constitute violations of the NYCHRL involving willful or wanton negligence, recklessness, and a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. The New York City Commission on Human Rights issued enforcement guidance on hair texture discrimination in 2019, six years before this incident. Defendant operates one of its retail and salon locations in New York City and is charged with knowledge of and compliance with the NYCHRL's protections. Defendant's management-endorsed refusal of service based on hair texture, at a location with a documented history of racially disparate treatment of customers of color, reflects not mere negligence but a deliberate and ongoing indifference to the rights of Black New Yorkers. Plaintiffs are accordingly entitled to an award of punitive damages.

57. Defendant's unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, mental anguish, humiliation, embarrassment, pain and suffering.

58. Defendant is liable to Plaintiffs for compensatory and punitive damages, attorneys' fees, costs and interest.

**JURY DEMAND**

59. Plaintiffs request a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiffs respectfully request a judgment against Defendant:

A. Declaring that Defendant, through the actions, omissions, policies, practices, and/or procedures complained of, violated Section 1981, the NYSHRL, and the NYCHRL.

B. Granting preliminary and permanent injunctive relief requiring Defendant to (i) implement mandatory, recurring anti-discrimination and implicit bias training for all salon staff and management personnel at each of its New York State locations, with specific instruction on the requirements of the New York CROWN Act, N.Y. Exec. Law § 292(37), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4); (ii) implement and enforce written policies expressly prohibiting the refusal of cosmetology services based on a customer's race, color, ethnicity, or hair texture, in compliance with N.Y. Gen. Bus. Law §§ 404 and 407; and (iii) designate a compliance officer or responsible personnel at each New York State location to receive, document, and investigate customer complaints of discriminatory treatment.

C. Awarding monetary damages to Plaintiffs to compensate them for the discrimination they experienced, including damages for emotional distress.

D. Awarding Plaintiffs punitive damages.

E. Awarding Plaintiffs reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

F. Granting such other relief as this Court deems just and proper.

Dated: Brooklyn, New York
March 11, 2026

          **DOLCE LAW PLLC**

By: _/s/ Wendy Dolce_
Wendy Dolce, Esq.
44 Court Street, Suite 1217
Brooklyn, New York 11201
Telephone: (718) 571-9162
wendy@dolcelaw.com
*Attorneys for Plaintiffs*

15